**IN THE
UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT**

_____

Docket No. 10-4188

_____

UNITED STATES OF AMERICA,

Appellee,

v.

DORIAN SWAN,

Appellant.

_____

On Appeal From:   The United States District Court for the District of the Virgin
Islands, The Honorable Judge Curtis Gomez, Chief Judge, Presiding

_____

**REPLY BRIEF OF APPELLANT DORIAN SWAN**

_____

JOHN R. HOWES, ESQ.
HOWES LAW GROUP, P.A.
633 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
Tel: 954.763.6003
Florida Bar No. 219193
Attorney for Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS                                                    iii

ARGUMENT                                                              1

**I.    INSUFFICIENT EVIDENCE WAS ADDUCED AT TRIAL
        TO CONVICT MR. SWAN OF THE CHARGED
        CONSPIRACY.**                                                 1

**II.   ADMISSION OF EVIDENCE AGAINST MR. SWAN RAN
        AFOUL OF FED. R. EVID. §404(b).**                             3

**III.  THE INTERESTS OF JUSTICE REQUIRE THAT A NEW
        TRIAL BE ORDERED, BECAUSE THE GOVERNMENT
        PREJUDICIALLY MISCHARACTERIZED
        EVIDENCE DURING CLOSING.**                                    5

CONCLUSION                                                            6

CERTIFICATE OF COMPLIANCE-FRAP RULE 32                                7

CERTIFICATE OF COMPLIANCE WITH E-FILING RULES                        7

CERTIFICATE OF BAR MEMBERSHIP                                         7

CERTIFICATE OF SERVICE                                                7

# TABLE OF CITATIONS

**<u>CASES</u>**                                                                              **<u>Page</u>**

*Berger v. United States*, 295 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*U.S. v. Caraballo-Rodriguez*, 726 F.3d 418 (3rd Cir. 2013) . . . . . . . . . . . . . . . 2

*United States v. Cooper*, 121 F.3d 130 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . 1

*United States v. Kamp*, 781 F.2d 1008 (3rd Cir. 1986) . . . . . . . . . . . . . . . . .. 2, 5

*United States v. Scanzello*, 832 F.2d 18, 20 (3d Cir.1987) . . . . . . . . . . . . . . . . . 3

*United States v. Terselich*, 885 F.2d 1094, 1098 (3d Cir.1989) . . . . . . . . . . . . .1

*United States v. Thomas,* 114 F.3d 403 (3rd Cir. 1997)    . . . . . . . . . . . . . . . . . .3

**<u>Statutes</u>**

Federal Rule of Evidence §404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# ARGUMENT

## I.    INSUFFICIENT EVIDENCE WAS ADDUCED AT TRIAL TO CONVICT MR. SWAN OF THE CHARGED CONSPIRACY.

The Government argues that there was "overwhelming" evidence that Mr. Swan was a member of the "charged conspiracy", a statement that could not be further from the truth.   While there admittedly was evidence that Mr. Swan grew up in the Islands, knew several of the codefendants and alleged co-conspirators, what was wholly lacking was evidence that he was a part of and joined in the conspiracy charged in the Indictment.   The Initial Brief set forth the law regarding what evidence is sufficient to establish a person's membership in a conspiracy and also what was insufficient. See: *United States v. Terselich*, 885 F.2d 1094, 1098 (3d Cir.1989) and *United States v. Cooper*, 121 F.3d 130, 133 (3rd Cir. 1997) together with the other cases cited in the Brief.

While the evidence presented to the jury may have been sufficient to implicate Mr. Swan's involvement in and knowledge of drug dealing in general, it utterly failed to establish that Mr. Swan was a member of the conspiracy charged. At best the evidence presented indicated that at times, when supplies were otherwise unavailable to members of the charged conspiracy, overtures were made to Mr. Swan for him to supply cocaine to the group from his own, separate sources of cocaine and which had been supplied and delivered to Mr. Swan in a different part of the country, New York versus North Carolina.   The evidence established

that Mr. Swan had a separate and distinct delivery system for cocaine into the mainland, not the one used by conspiracy members.   The best the Government can present is a claim that the evidence presented met the "bare rationality test" set forth in *U.S. v. Caraballo-Rodriguez*, 726 F.3d 418 (3rd Cir. 2013)(en banc).   As opposed to providing the Government with a claim of a barely rational interpretation of the evidence, Mr. Swan points to the portion of the Government's Brief at page 18, which refers to the three requirements set forth in *Caraballo-Rodriguez,* all three of which were missing in this case.   Those requirements that the government must show are:   "(1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal."   *Caraballo-Rodriguez*, 726 F.3d at 425.   Here, as stated above and in the initial Brief, there was a lack of unity between Mr. Swan and the members of the conspiracy, in fact they were competitors who, on occasion, bought and sold cocaine to each other, not a unified group "work(ing) toward that goal".   Mr. Swan was no more than a seller of cocaine already brought onto the mainland by Mr. Swan which was then sold to members of the conspiracy.

By itself, evidence of a buyer-seller relationship is insufficient to establish conspiracy.   *United States v. Kamp*, 781 F.2d 1008 (3rd Cir. 1986).   Here the Government failed its burden to prove 'that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the

indictment." *United States v. Thomas*, 114 F.3d 403 (3rd Cir. 1997)(quoting *United States v. Scanzello*, 832 F.2d 18, 20 (3d Cir.1987)).    All that the Government established was that a conspiracy existed (without Mr. Swan's inclusion) to which Mr. Swan sold cocaine to in New York that was then shipped back to the conspiracy's base of operation in North Carolina and the Baltimore area.

The Government's reliance on evidence of a wholly separate and unrelated conspiracy to distribute cocaine cannot be allowed to stand.    Mr. Swan's convictions must be reversed.


## II.    ADMISSION OF EVIDENCE AGAINST MR. SWAN RAN AFOUL OF FED. R. EVID. §404(b).

The Government is correct in its assertion that Mr. Swan submits that all of the evidence presented against him was related to other crimes related to an uncharged conspiracy.    That is the heart of the argument and the reason for the error that occurred in this case.    Since the only evidence that the jury heard from the Government dealt with a conspiracy that Mr. Swan was not proven to be a member of, and which Mr. Swan at most acted as a seller to, then all of the evidence presented at trial was inadmissible against him and prejudicial, therefore requiring a reversal.    Mr. Springette, the admitted leader of the group testified about his illegal activities in Colombia, his arrest and escape in that country and

3

then his bringing his cousin, Elton Turnbull, into the conspiracy to operate the retrieval of cocaine by air drop into the British Virgin Islands and then its shipment by boat into the U.S. Virgin Islands.    JA 166.    Notably, Mr. Springette did not mention Mr. Swan in either his elaborate chart that he prepared shortly after his arrest nor at trial.

Also revealing, and likewise prejudicial to Mr. Swan was the testimony about Gelean "Kerwin" Mark, who was allegedly in charge of moving the cocaine from the Virgin Islands to the mainland.    JA 259-65, 277-78.    What the testimony demonstrated is that Kerwin Mark had his own connections at the airport in St. Thomas and his own delivery route in North Carolina operating out of the airport in Charlotte.    This demonstrates Mr. Swan's non-association with the conspirators as charged in the indictment and also demonstrates the prejudice of allowing all of this testimony and evidence to come in ostensibly concerning Mr. Swan's involvement in the conspiracy.    The Government in its Brief at page 7 admits that "Swan had a route for the cocaine through the airport to the Philadelphia/Baltimore area."    On the same page the Government's Brief continues:    "Turnbull received cocaine via Swan on three or four occasions.    JA 267.    Turnbull testified that he never saw Swan pick up drugs and never saw Mr. Swan in possession of cocaine.    However, he did testify that Mr. Swan had tried to attract his business **as a purchaser**, away from the business of alleged

4

co-conspirator Gelean Mark.   The evidence established that Swan was running his own operation, separate and apart from the charged conspiracy and the introduction of the vast majority of the evidence introduced at trial, by testimony and tangible evidence had an unacceptable prejudicial effect on his case.

### III.   THE INTERESTS OF JUSTICE REQUIRE THAT A NEW TRIAL BE ORDERED, BECAUSE THE GOVERNMENT PREJUDICIALLY MISCHARACTERIZED EVIDENCE DURING CLOSING.

Due to the paucity of direct evidence connecting Mr. Swan to the conspiracy, following Swan's closing statement, the Government attempted to paint what it knew was a false impression on the jury.   Mr. Swan's recorded statements referred to his sale of cocaine to members of the conspiracy when those members were running dry on drugs for reasons unassociated with Mr. Swan.   He was a seller of drugs and as stated above, a buyer-seller relationship does not create a conspiracy.   *United States v. Kamp*, *supra.*

This misleading argument, which Mr. Swan did not have the chance to refute, was particularly prejudicial to him in this case.   Such statements can even rise to a due process violation, which is what occurred there.   *See: Berger v. United States*, 295 U.S. 78 (1935).   "[I]mproper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.* at 88.

In closing, the government commented on a recorded telephone conversation between Mr. Swan and a third party in an effort to link the alleged two kilos to the ones testified to by Isaac. In that conversation Swan told Isaac "Ah, some day ago I had couple little fowl and thing um, 'Thrush' end up with two of them.   So I had to drive up there and get the cab from he and dem f***, you know what I mean?" [Gov. Ex. (GX)44].   This characterization is not only misleading, but also inconsistent with the government's own admission that Mr. Isaac's testimony limited Mr. Swan's involvement to May or June 2003. [A2300]. Yet the phone conversation refers to "someday [sic] ago."   Counsel for Mr. Swan made a contemporaneous objection. [A2295].

## CONCLUSION

Based on the arguments submitted in this brief, the Appellant, Dorian Swan, Respectfully requests this honorable court to vacate his conviction and sentence, or in the alternative remand for a new trial.

Respectfully submitted,

/s/John R. Howes, Esq.
Howes Law Group, P.A.
633 S. Andrews Avenue, Suite 500
Ft. Lauderdale, FL 33301
Florida Bar No. 0219193
johnrhowes@gmail.com
Telephone:   954.763.6003

## <u>CERTIFICATE OF COMPLIANCE - FRAP RULE 32</u>

I certify that this brief complies with the type-volume limitation set forth in

FRAP 32(a)(7)(B).    This brief contains 1,535 words.

/s/John R. Howes
John R. Howes, Esquire

## <u>CERTIFICATE OF COMPLIANCE RE: E-BRIEF</u>

I hereby certify that the text of the E-Brief and the text of the hard copy are

identical.    I also certify that I have performed a virus scan on the E-Brief using

Mackeeper 2.11.4.

/s/John R. Howes, Esq.
John R. Howes, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that this brief has been served on the Filing User identified

below through the Electronic Case Filing (ECF) system to:

Tasheika Hinson
Assistant United States Attorney
5500 Veterans Drive, Suite 260
St. Thomas, Virgin Islands 00802-6425

/s/John R. Howes, Esq.
John R. Howes, Esq.

Dated this 18th day of January, 2017.